1  **COOLEY LLP**
   SHANNON M. EAGAN (212830)
2  (seagan@cooley.com)
   3175 Hanover Street
3  Palo Alto, CA  94304-1130
   Telephone:    +1 650 843 5000
4  Facsimile:    +1 650 849-7400

5  JEFFREY M. GUTKIN (216083)
   (jgutkin@cooley.com)
6  3 Embarcadero Center, 20th Floor
   San Francisco, California  94111-4004
7  Telephone:    +1 415 693 2000
   Facsimile:    +1 415 693 2222

8
   Attorneys for Non-Parties
9  Benjamin J. Mann and Dario Amodei

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

14  IN RE OPENAI CHATGPT LITIGATION      Case No. 3:23-cv-03223-AMO

15                                       **NON-PARTY DARIO AMODEI'S OPPOSITION
                                         TO *IN RE OPENAI* AND *AUTHORS GUILD***
16                                       **PLAINTIFFS' MOTIONS TO COMPEL
                                         DEPOSITION**
17
                                         Date:       March 4, 2025
18                                       Time:       11:00 a.m.
                                         Judge:      Hon. Robert M. Illman
19

20  *In re* MOTION TO COMPEL             Misc. Case No. 3:25-mc-80017-AMO
    COMPLIANCE WITH NON-PARTY
21  SUBPOENAS
                                         Underlying Litigation: *Authors Guild, et al.
22  In the matter of                     v OpenAI, et al.*, 1:23-cv-0822-SHS
                                         (S.D.N.Y)
23  AUTHORS GUILD, *et al.*, individually
    and on behalf of others similarly situated,
24
           Plaintiffs,
25
        v.
26
    OPENAI INC., *et al.*,
27
           Defendants.
28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................. 2

  A.  Non-Party Mr. Amodei Has No Unique, Relevant Knowledge. ...................... 2

  B.  Plaintiffs Insist on Deposing Mr. Amodei Before They Depose Party
     Witnesses or Have the Relevant Documents from OpenAI. ........................... 3

  C.  Defendants Proposed Having Another Anthropic Employee With Superior
     Knowledge To Mr. Amodei Testify .............................................................. 4

III.  NON-PARTIES ARE ENTITLED TO EXTRA DISCOVERY PROTECTIONS ........... 4

IV.  ARGUMENT ........................................................................................................ 5

  A.  The Motions Should be Denied Because Plaintiffs Have Not Attempted to
     Get This Information From First-Party or Other More Appropriate
     Witnesses. ...................................................................................................... 5

  B.  The Motions Should be Denied Because Plaintiffs Did Not Establish that
     Mr. Amodei Possesses Unique, Relevant Information They Cannot Get
     Elsewhere. ...................................................................................................... 6

     1.  OpenAI's Interrogatory Responses and Emails Do Not Show Mr.
        Amodei Had A Role in ████████████████ ........................................ 7

     2.  The Documents in the Motions Show That Mr. Amodei Has No
        Unique Knowledge that Plaintiffs Could Not Learn from Other
        Deponents. ............................................................................................ 9

        a.  There is No Evidence that Mr. Amodei Downloaded
           Copyrighted Works. ..................................................................... 9

        b.  No Evidence of Mr. Amodei's Involvement in the Decision
           to Download Books from LibGen. .............................................. 11

        c.  No Evidence Mr. Amodei Chose the Names "Books1" and
           Books2." ..................................................................................... 12

        d.  No Unique Knowledge of "Mitigation" Efforts. ......................... 13

        e.  Destruction of Books1 and Book2 Occurred ████████
           ████████ ..................................................................... 13

     3.  The Recently-Ordered Deposition of Mr. Mann Weighs Sharply
        Against The Need for Mr. Amodei's Deposition. ................................... 13

  C.  Plaintiffs' Motions Should Further Be Denied Because Mr. Amodei's
     Deposition Is Precluded by the Apex Doctrine. ........................................... 14

  D.  If Mr. Amodei's Deposition is Compelled, the Court Should Limit It. ........ 16

V.  CONCLUSION .................................................................................................... 17

COOLEY LLP
ATTORNEYS AT LAW

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Apple, Inc.*,
   2011 WL 1753982 (N.D. Cal. May 9, 2011) ........................................................... 15

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) ....................................................................... 5, 6

*Anderson v. Cnty. of Contra Costa*,
   2017 WL 930315 (N.D. Cal. Mar. 9, 2017) ........................................................... 14

*Apple Inc. v. Samsung Elecs. Co.*,
   282 F.R.D. 259 (N.D. Cal. 2012) ......................................................................... 16

*Arminak v. Arminak & Assocs., LLC*,
   2017 WL 10402987 (C.D. Cal. Mar. 30, 2017) ....................................................... 14

*Athalonz, LLC v. Under Armour, Inc.*,
   2024 WL 628846 (N.D. Cal. Feb. 14, 2024) ...................................................... 6, 16

*Celerity, Inc. v. Ultra Clean Holding, Inc*.,
   2007 WL 205067 (N.D. Cal. Jan. 25, 2007) ........................................................... 15

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
   2015 WL 9434782 (E.D. Cal. Dec. 24, 2015) ......................................................... 15

*Coppel v. Sea World Parks & Ent., Inc.*,
   2024 WL 4472352 (S.D. Cal. Aug. 19, 2024) ......................................................... 5

*Davis v. Pinterest, Inc.*,
   2021 WL 3044958 (N.D. Cal. July 20, 2021) .......................................................... 6

*Genus Lifesciences Inc. v. Lannett Co.*,
   2019 WL 7313047 (N.D. Cal. Dec. 30, 2019) ......................................................... 5

*In re Glumetza Antitrust Litig.*,
   2020 WL 3498067 (N.D. Cal. June 29, 2020) ........................................................ 15

*In re Google Litig.*,
   2011 WL 4985279 (N.D. Cal. Oct. 19, 2011) ......................................................... 15

*Johnson v. Jung*,
   242 F.R.D. 481 (N.D. Ill. 2007) .......................................................................... 15

*Kadrey v. Meta Platforms, Inc.*,
   2024 WL 4293910 (N.D. Cal. Sept. 24, 2024) ....................................................... 15

*Klungvedt v. Unum Grp.*,
    2013 WL 551473 (D. Ariz. Feb. 13, 2013) ............................................................... 15

*Maplebear Inc. v. Uber Techs., Inc.*,
    2021 WL 1845535 (N.D. Cal. Mar. 23, 2021) ........................................................... 4

*Mills v. Wal-Mart Stores, Inc.*,
    2007 WL 2298249 (W.D. Ark. Aug. 7, 2007) .......................................................... 15

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
    2012 WL 4846522 (N.D. Cal. Aug. 7, 2012) ............................................................ 4

*Soto v.Castlerock Farming & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012) .............................................................................. 5

**Other Authorities**

Fed. R. Civ. P.

    Rule 26(b)(2)(C)........................................................................................................ 5

COOLEY LLP
ATTORNEYS AT LAW

iii

NON-PARTY'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DEPO
3:23-CV-03223-AMO; 3:25-MC-80017-AMO

1  **I.    INTRODUCTION**

2        Before the Court are two motions to compel the deposition of Mr. Dario Amodei, the Chief

3  Executive Officer of non-party Anthropic PBC, (the "Motions") filed by the plaintiffs in two related

4  actions against OpenAI, Inc.: *Authors Guild, et. al v. OpenAI, et. al.* and *In re OpenAI ChatGPT*

5  *Litigation* ("*Authors Guild* Plaintiffs," "*In re OpenAI* Plaintiffs" or collectively "Plaintiffs").[1]  For

6  the reasons discussed below, the Court should deny the Motions in their entirety.

7        First, Plaintiffs have not even attempted to get the purportedly relevant information from

8  OpenAI, and they must do so before forcing Mr. Amodei to sit for deposition.  Together, Plaintiffs

9  have taken ***only one first-party OpenAI deposition*** and no Rule 30(b)(6) depositions (on the topics

10 that Mr. Amodei will purportedly cover or otherwise).  Moreover, per the Court's recent order, they

11 will soon ***depose Mr. Benjamin Mann for a full seven-hours.***  This discovery may well eliminate

12 any need to depose Mr. Amodei.  Under settled law, Plaintiffs cannot elect to leapfrog unconducted

13 first-party discovery.  Thus, this motion is premature now and may never be proper at all.

14       Second, Plaintiffs do not establish that Mr. Amodei has ***unique***, relevant information that

15 they cannot obtain from OpenAI or Mr. Mann.  For example, Plaintiffs' claim that Mr. Amodei

16 was one of the two ████████████████████ (*see, e.g.*, *In re OpenAI,* ECF No. 278-1,

17 Mot. ("*In re OpenAI,* Mot.") at 3), is belied by the interrogatory responses and documents they cite.

18 Those show that many individuals were personally involved in the relevant discussions, including

19 ***current OpenAI employees*** and Mr. Mann.  (*See infra* IV.B.)  Whether or not Plaintiffs could

20 someday show that Mr. Amodei possesses unique knowledge, after taking first-party discovery,

21 they have not done so yet.

22       Similarly, Plaintiffs' claim that Mr. Amodei is "likely" to have personal knowledge of the

23 purported deletion of the "Books" datasets is ***demonstrably false***.  Evidence from OpenAI makes

24 clear that this data was removed ████████████.  (*See infra* IV.B.2.; *In re OpenAI*, Mot. at

25

26

27 [1] The underlying *Authors Guild* case is *Authors Guild v. OpenAI Inc.*, No. 1:23-cv-08292
   (S.D.N.Y.) ("*Authors Guild NY*").  The *Authors Guild* Plaintiffs filed their motion to compel to
28 enforce the subpoena in *In re Motion to Compel Compliance with Non-Party Subpoenas*, Misc.
   Case No. 3:25-mc-80017 (N.D. Cal.) ("*Authors Guild*").

8; Gutkin Decl., ¶7[2].) This spurious claim only proves that Plaintiffs have not done their homework, and the Court should reject, rather than reward, their attempt to shortcut this basic diligence.

Fourth, because Mr. Amodei is the Chief Executive of an OpenAI competitor, the Court should not underestimate the burden of his deposition. While it may have been easy for OpenAI to include his name, along with others, in an interrogatory response, preparing for and testifying in a deposition is a substantial burden to impose on the leader of a major, non-party organization.

Finally, if the Court does not deny Plaintiffs' motion outright, it should, at a minimum, defer any decision until after Plaintiffs: (1) depose Mr. Mann; (2) depose all relevant OpenAI employees; (3) identify any concrete gaps in discovery that only Mr. Amodei can fill; and (4) limit Mr. Amodei's deposition in time and scope to only non-cumulative, relevant information.

## II.    FACTUAL BACKGROUND

### A.    Non-Party Mr. Amodei Has No Unique, Relevant Knowledge.

Non-party Dario Amodei is the Chief Executive Officer and a board director of non-party Anthropic PBC, a leading artificial intelligence research and safety company that competes with OpenAI.[3] (Gutkin Decl., ¶7.) In the four years since the Company's founding, Anthropic has developed some of the best large language models in the word, competing directly with OpenAI, grown to more than 1000 employees, and has obtained sizeable and well-publicized investments.[4]

Mr. Amodei previously worked at OpenAI from July 2016 until December 2020. (Gutkin Decl., ¶7.) Mr. Amodei was never a data engineer, and his roles related to research and safety. (*Id.*) Plaintiffs' allegations are aimed at uncovering what data sources were used to train OpenAI's ChatGPT models, (*see In re OpenAI*, ECF No. 120 ("Amended Complaint" or "AC"), ¶ 33), but Mr. Amodei, as a Vice President, had a supervisory role (Gutkin Decl., ¶7), and nothing in the record demonstrates that he constructed or collected the data used to train the models. Rather, as Mr. Mann explained in his declaration, numerous current OpenAI employees were involved in

---

[2] Declaration of Jeffrey M. Gutkin in Support of Non-Party Dario Amodei's Opposition to *In re OpenAI* and *Authors Guild* Plaintiffs' Motion to Compel Deposition ("Gutkin Decl."), filed concurrently herewith.
[3] *See* Anthropic, Making AI systems you can rely on, https://www.anthropic.com/company.
[4] *See, e.g.*, Hayden Field, *Google agrees to new $1 billion investment in Anthropic*, CNBC (Jan. 22, 2025), https://www.cnbc.com/2025/01/22/google-agrees-to-new-1-billion-investment-in-anthropic.html.

the decision-making around the use of training data for those models, including Nick Ryder, Chris Hallacy and Shantanu Jain. (*In re OpenAI*, ECF No. 272-3, Mann Decl., ¶¶ 2-3.)

**B.      Plaintiffs Insist on Deposing Mr. Amodei Before They Depose Party Witnesses or Have the Relevant Documents from OpenAI.**

Though this action was filed nearly two years ago, discovery is still ongoing, and first-party deposition discovery has hardly begun.  Plaintiffs in both matters are still fighting with OpenAI over document production, and they have taken *only one* OpenAI deposition in *In re OpenAI* and *none* in the *Authors' Guild* matter. (Gutkin Decl., ¶5.)  Nor have they taken a Rule 30(b)(6) deposition of OpenAI. (*Id.*)  And, just last week, the Parties in the *In re OpenAI* matter filed a joint discovery letter showing that Plaintiffs have asked OpenAI to review an additional 345,000 documents hitting on 362 search terms to capture topics such as "OpenAI's theft of copyrighted works from pirated databases," "OpenAI's torrenting and seeding of copyrighted works," and "*why* OpenAI chose to train its models on copyrighted books" search terms. (*In re OpenAI*, ECF No. 298 at 3.) This is the same information the *In re OpenAI* Plaintiffs seek from Mr. Amodei. (*Cf. In re OpenAI*, Mot. at 5-6 (claiming Mr. Amodei  has knowledge of the "Means and Methods of ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████.) OpenAI estimates that, if the Court grants this request for further document collection and review, Plaintiffs may not receive these documents for several weeks to another month. (*In re OpenAI*, ECF No. 298 at 3, 5.) Similarly, negotiations between the *Authors Guild* Plaintiffs and OpenAI around deposition scheduling are ongoing. (*Authors Guild NY*, ECF Nos. 307, 321.)

With incomplete first-party document productions, and after negligible steps to gather this information from OpenAI first, Plaintiffs in both cases subpoenaed Mr. Amodei.  Mr. Amodei's prior counsel objected to the subpoenas as unduly burdensome under Rule 45, because (1) Plaintiffs should seek the information from OpenAI witnesses first, and (2) the deposition would be extremely burdensome for Mr. Amodei, particularly because he is an apex officer of Anthropic. When conferring on these topics, Mr. Amodei's previous counsel insisted that, among other things, he could be deposed only once across the OpenAI cases, and counsel declined to set the deposition

1   date while other discovery, along with other disputes over the scope and nature of the deposition,

2   remained outstanding.  (*See Authors Guild*, ECF No. 1-1, Exs. E-F.)  Any supposed agreement to

3   provide a deposition was subject to hypothetical future developments in the case, including a

4   deposition coordination order that was not in place.  (*Id.*; *see Authors Guild*, ECF No. 2-1, Mot.

5   ("*Authors Guild*, Mot.") at 2.)  During the meet and confer efforts, and to date, there is no indication

6   the parties have agreed on the scope or sequencing of any depositions to ensure that Mr. Amodei

7   only testifies to non-cumulative information, in order to limit the burden on Mr. Amodei.  (*Authors*

8   *Guild*, ECF No. 1-1, Exs. E-F.)

9           C.      **Defendants Proposed Having Another Anthropic Employee With Superior**
                    **Knowledge To Mr. Amodei Testify.**

10

11          Plaintiffs in both matters also subpoenaed another Anthropic employee, Benjamin J. Mann

12  ("Mr. Mann") to testify, claiming that OpenAI's discovery responses also identified him as having

13  relevant knowledge.  (*See In re OpenAI*, ECF No. 248 at 8.)  In an effort to avoid this motion

14  practice, prior counsel for Mr. Amodei and Mr. Mann offered to have Mr. Mann sit for deposition

15  if Plaintiffs would agree, among other things, to forgo the deposition of Mr. Amodei, who

16  possesses, at best, a cumulative and less detailed understanding of the discovery sought from Mr.

17  Mann.  (*See In re OpenAI*, ECF No. 248; *Authors Guild*, ECF No. 1-1, Ex. I.)  Plaintiffs refused

18  that offer and filed their Motions on January 28, 2025.  (*In re OpenAI*, ECF No. 278-1; *Authors*

19  *Guild*, ECF No. 1.)  On February 11, 2025, the Court ruled that Mr. Mann would sit for a seven-

20  hour deposition, which is scheduled for February 27, 2025.  (Gutkin Decl., ¶4.)

21          Non-party Mr. Amodei intends to meet and confer with Plaintiffs on February 18, 2025 to

22  attempt   to   resolve   the   dispute   over   his   deposition,   and   will   update   the

23  Court accordingly.  (Gutkin Decl., ¶6.)

24  **III.    NON-PARTIES ARE ENTITLED TO EXTRA DISCOVERY PROTECTIONS**

25          The "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra

26  protection from the courts."  *Maplebear Inc. v. Uber Techs., Inc.*, 2021 WL 1845535, at *1 (N.D.

27  Cal. Mar. 23, 2021) (citation omitted); *In re NCAA Student-Athlete Name & Likeness Licensing*

28  *Litig.*, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) ("*NCAA*").  The court also "must limit

the frequency or extent of discovery" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]"  Fed. R. Civ. P. 26(b)(2)(C).  And, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry.  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

## IV.    ARGUMENT

### A.    The Motions Should be Denied Because Plaintiffs Have Not Attempted to Get This Information From First-Party or Other More Appropriate Witnesses.

Plaintiffs seek information about the creation of Books1 and Books2, yet first want to depose non-party Mr. Amodei before questioning anyone at OpenAI on this topic.  Moreover, after the Court's recent ruling, Plaintiffs will soon be taking a full seven-hour deposition of Mr. Amodei's direct subordinate at OpenAI, and, according to Plaintiffs, the person primarily responsible for creating these datasets, Mr. Mann.  Under these circumstances, settled law bars Plaintiffs from deposing Mr. Amodei without a specific showing that he has relevant, non-cumulative knowledge.

Plaintiffs claim that burdening Mr. Amodei with an all-day deposition is warranted because the case law does not require them to seek this discovery from OpenAI first.  (*In re OpenAI*, Mot. at 2.)  Not so.[5]  As numerous courts have explained, "there is a preference for parties to obtain discovery from one another ***before*** burdening non-parties with discovery requests."  *Genus Lifesciences Inc. v. Lannett Co.*, 2019 WL 7313047, at *4–5 (N.D. Cal. Dec. 30, 2019) (emphasis added) (quoting *Soto v.Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (collecting cases)).  Accordingly, courts regularly bar non-party discovery when the requesting party has not adequately attempted first-party discovery on the same subject.  *See, e.g., Coppel v. Sea World Parks & Ent., Inc.*, 2024 WL 4472352, at *5 (S.D. Cal. Aug. 19, 2024) ("Having elected

---

[5] Plaintiffs also argue that going directly to this non-party deposition would be more "efficient," but they are also wrong on the facts, as discussed in the next section.

not to pursue these documents from Defendants, Plaintiffs may not now seek the same documents from [a third party].”); *Davis v. Pinterest, Inc.,* 2021 WL 3044958, at *4 (N.D. Cal. July 20, 2021).

In the context of deposition subpoenas, the applicable precedent makes clear that, where “the requesting party has not shown that it attempted to obtain [discovery] from the opposing party in an action prior to seeking [discovery] from a non-party,” a deposition subpoena “places an undue burden on a non-party” and a motion to compel should be denied on that basis.  *See, e.g.*, *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 628846, at *5 (N.D. Cal. Feb. 14, 2024) (cleaned up); *Amini Innovation Corp.*, 300 F.R.D. at 411 (quashing the deposition subpoena of a non-party alleged co-designer of an infringing product, where the relevant information could be obtained from a party).  Indeed, this logic applies with extra force for depositions, which are more burdensome on third-party individuals, particularly where Plaintiffs have not identified what unique information that third-party might have.  *See Athalonz*, 2024 WL 628846, at *7-8 (noting that Plaintiffs need to first pursue depositions and documents from Defendants in order to establish what unique information the third-party may have).

Plaintiffs here cannot ignore their clear obligation to minimize the burden on the CEO of a non-party by seeking discovery from more appropriate sources in the first instance.

**B.**   **The Motions Should be Denied Because Plaintiffs Did Not Establish that Mr. Amodei Possesses Unique, Relevant Information They Cannot Get Elsewhere.**

Plaintiffs argue that the Court should set aside this robust body of law and permit their immediate deposition of Mr. Amodei because certain OpenAI written discovery responses and some case documents purport to show that Mr. Amodei has knowledge that cannot be obtained from more appropriate sources, making the burden on Mr. Amodei necessary and appropriate.  In truth, the documents and discovery responses that both the *In re OpenAI* and *Authors Guild* Plaintiffs cite in their Motions show the exact opposite: that Mr. Amodei does ***not*** possess unique information that they cannot get from current OpenAI employees or from Mr. Mann.  Plaintiffs’ attempt to create the illusion Mr. Amodei has unique information does not withstand scrutiny.

Cooley LLP
Attorneys at Law

6

Non-Party's Opposition to Plaintiffs'
Motion to Compel Depo
3:23-cv-03223-AMO; 3:25-mc-80017-AMO

1. **OpenAI's Interrogatory Responses and Emails Do Not Show Mr. Amodei Had A Role in** ████████████████████████.

Plaintiffs in both matters attempt to create the false impression that Mr. Amodei was one of two individuals responsible for the ██████████████████████, pointing to OpenAI Interrogatory Responses and correspondence. However, these documents say no such thing.

The *In re OpenAI* Plaintiffs cite interrogatory responses from ten months ago based on OpenAI's then-current understanding. The first response states that unnamed ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ (*In re OpenAI*, OpenAI Suppl. Resp. to Rog. at 6.) Plaintiffs also point to OpenAI's Supplemental Response to Interrogatory 15, which called for, among other things, ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. (*Id.* at 8-9.) In its answer, OpenAI identified ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ (*Id.* at 9.) However, sometime later, OpenAI supplemented that response to add ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (*Id.*) Neither of these responses establishes that Mr. Amodei was the creator of Books1 and Books2 or, indeed, establishes that he had any personal role in their creation at all.

It is further notable that this interrogatory response ██████████████ was verified, not by any of ████████████████████████████████████████████████████████████████ of GPT-3.5, but by a member of the OpenAI *legal department*, who did not work at OpenAI at the time the relevant events occurred.[6] In other words, despite the fact that many current OpenAI employees were a part of the same team as Mr. Amodei and Mr. Mann at the time of Mr. Amodei's alleged actions (*see In re OpenAI*, ECF No. 248, Mann Decl., ¶ 5; ECF No. 272-3, Mann

---

[6] Kellogg Verification; LinkedIn, Bright Kellogg, https://www.linkedin.com/in/bright-yuan-kellogg-3b910820/; *see also* OpenAI, GPT-4o contributions, https://openai.com/gpt-4o-contributions/ (recognizing Bright Kellogg as a member of the legal team).

Decl., ¶¶ 2-3, 5), none of those contemporaneous employees sponsored the testimony on which Plaintiffs ask the Court to put so much weight. Moreover, Mr. Mann's declaration establishes that Mr. Mann never worked on GPT-3.5, casting further doubt on the veracity of the response. (ECF No. 272-3, Mann Decl., ¶ 8.)

The *In re OpenAI* Plaintiffs also claim that conversations with OpenAI's counsel suggested that these interrogatory responses pointed to Mr. Mann and Mr. Amodei as ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. (*See In re OpenAI*, Mot. at 5.) However, that's not what the discovery responses say. And those conversations ***are not evidence,*** and do not establish that Mr. Amodei has unique, non-cumulative knowledge.[7] Rather, the interrogatory responses simply reflect the status of Defendant OpenAI's investigation, that Mr. Amodei, among ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ That is far from establishing that Mr. Amodei has unique and important knowledge.

The *Authors Guild* Plaintiffs make similar claims, although they primarily rely on an email from OpenAI's counsel sent at the outset of discovery—not sworn written discovery or a produced document. This email reflected counsel's preliminary findings, as of April 2024: ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Authors Guild*, ECF No. 2-1, Ex. D.) OpenAI's statement, even if treated as a proxy for actual evidence, saying that Mr. Amodei was ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ as the *Authors' Guild* Plaintiffs claim.[8] (*Authors' Guild*, Mot. at 2.)

The *Authors Guild* Plaintiffs also point to OpenAI's Interrogatory Responses from April 2024, which, like the Interrogatory Responses provided to the *In re OpenAI* Plaintiffs, also

---

[7] According to LinkedIn, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are current OpenAI employees. Further, these individuals started at OpenAI in 2018 and 2019 respectively, and thus, have been with the company through its use and development of Books1 and Books2. (*See In re OpenAI*, OpenAI Suppl. Resp. to Rog. at 9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮.)

[8] The *Authors Guild* Plaintiffs also rely on a March 2024 letter from OpenAI that similarly states that based on OpenAI's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Authors Guild*, ECF No. 2-1, Ex. C.)

1     ███████████████████████████████ with knowledge of the relevant facts – ██████████

2     ██████████████████. (*Authors Guild*, ECF No. 2-1, Ex. K at 6, 10.)[9]  The undersigned counsel

3     understands that the *Authors Guild* Plaintiffs have not deposed any of these individuals, nor anyone

4     else at OpenAI. (Gutkin Decl., ¶5.)  And tellingly, the *Authors Guild* Plaintiffs do not cite any

5     other documents even after nine months of discovery.

6            Thus, Plaintiffs have done nothing to pursue the first-party deposition testimony from

7     anyone at OpenAI named in these interrogatory responses, █████████████, who was named in

8     these responses and was an OpenAI employee until just last month, before demanding the

9     deposition of the CEO of a non-party OpenAI competitor.[10]  Either of the Plaintiffs' counsel groups

10    could have, just as an example, served a Rule 30(b)(6) notice to obtain OpenAI's collective

11    knowledge about the creation of these datasets and then could have identified for the Court actual

12    gaps that Mr. Amodei could fill, according to that testimony.  They made no such attempt because

13    they are hoping to simply side-step their obligations in defiance of case law.  The Court should

14    squarely reject this tactic.

15           **2.     The Documents in the Motions Show That Mr. Amodei Has No Unique**
               **Knowledge that Plaintiffs Could Not Learn from Other Deponents.**
16

17           Aside from Plaintiffs' unsupported claims that OpenAI interrogatory responses establish

18    that ██████████████████████████, the *OpenAI* Plaintiffs also argue that documents

19    produced in discovery show Mr. Amodei's unique knowledge of five categories of discoverable

20    information. (*In re OpenAI*, Mot. at 5.)  However, the cited documents show only that his purported

21    knowledge is shared by numerous individuals that still work at OpenAI and by Mr. Mann.

22           **a.     There is No Evidence that Mr. Amodei Downloaded Copyrighted Works.**

23           None of the documents that the *In re OpenAI* Plaintiffs cite (*id.*) show that Mr. Amodei

24

25    [9] Interrogatory 1 identified ████████████████████████████████████████████████

26    ███████████████████████████████████████████. (*Authors Guild*, ECF No.
      2-1, Ex. K at 6.)  Similarly, Interrogatory 7 identified ████████████████████████████████

27    ████████████████████████████████ (*Id.* at 10-11.)
      [10] The undersigned counsel understands that the *In re OpenAI* Plaintiffs have deposed ██████

28    ██████████████, who was not on the OpenAI training data team, but no other depositions have
      been taken. (Gutkin Decl., ¶5.)

1    ██████████████████████████████████████████████████, or that he made the decision to acquire

2    such data, let alone that he possesses unique knowledge of these subjects.  For example, the *In re*

3    *OpenAI* Plaintiffs cite three email threads with at least six other individuals (including two people

4    ***still at OpenAI***), discussing purchasing books as training data, but none even reference Books1,

5    Books2,    or    LibGen.[11]        (OPCO_NDCAL_1496743;        OPCO_NDCAL_0853484;

6    OPCO_NDCAL_0854459.)[12]  As to cited documents that do reference "LibGen," Mr. Amodei is

7    one of at least ***eleven other people*** in chat, email, and shared Google documents referencing it.[13]

8    However, these documents never discuss the decision to acquire it, or methods of downloading,

9    and also do nothing to establish that Mr. Amodei has unique personal knowledge on how the

10   Books1 and Books2 data was acquired.  (*See In re OpenAI*, Mot. at 6 n.6.)  For example, Plaintiffs

11   cite a shared Google document that simply states that ██████████████████████████

12   ███████ (OPCO-OPCO_NDCAL_0067518.)  While Mr. Amodei's name is on the document,

13   the document says on its face that ████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████

15   ███████████████████████████████████. (*Id.*)  In other words, many others,

16   including current OpenAI employees, should be questioned about this document.  Neither this

17   document nor others support Plaintiffs' rank speculation that Mr. Amodei "proceeded with

18   ████████ █ ██████████"  anything.    (*See   In   re   OpenAI*,  Mot.  at  6;  *see  also*

19   OPCO_NDCAL_0067583 ███████████████████████████████████████████████

20   ████████ ██████ █████████ ██ ████ ██████ ███████ ████████ █████████);

21   OPCO_NDCAL_0866414 (████████████████████████████████████████████████

22   ██████████████████████████).)[14]

23   ───────────────────────

[11] These emails include current OpenAI employees ████████████████████████████████.
[12] All references to "OPCO_NDCAL_#######" are to Amodei's production documents and were
     cited by Plaintiffs' in their Motion.  (*See, e.g., In re OpenAI*, Mot.)
[13] OPCO-NDCAL_0067518; OPCO_NDCAL_0067583; OPCO_NDCAL_0866414;
     OPCO_NDCAL_0854787; OPCO_NDCAL_0858690.
[14] *See also* OPCO_NDCAL_0854787 (████████████████████████████████████████
     ████████████████████████.  Plaintiffs also cite chats ███████████████████████
     ██████ (OPCO_NDCAL_0858690; OPCO_NDCAL_0867222.)  To the extent Plaintiffs seek this
     information, Plaintiffs can obtain it from Mr. Mann.

1    At most these documents show that, along with Mr. Mann—who Plaintiffs will be deposing

2  —and many others at OpenAI, Mr. Amodei was an occasional participant in large-group

3  conversations that touched on LibGen.  The documents say nothing about the decision to acquire

4  data from LibGen, and, if anything, show that these data were discussed by a full team of people at

5  OpenAI, disproving any notion that whatever relevant knowledge Mr. Amodei has is unique.

6    It is particularly telling that the *In re OpenAI* Plaintiffs have a massive volume of produced

7  documents and cherrypicked the few they believe paint the clearest picture of Mr. Amodei's unique

8  knowledge, but were still unable to show that he has that.  In fact, no counsel representing Mr.

9  Amodei's interests has access to OpenAI's production documents to rebut Plaintiffs' hand-selected

10  set and show which current OpenAI employees have knowledge of these particular facts that

11  exceeds Mr. Amodei's. This is particularly important because Mr. Amodei's interests and

12  OpenAI's are not necessarily aligned:  Mr. Amodei's testimony might partially pull the discovery

13  spotlight off of OpenAI, and he is the CEO of a direct competitor.

14    Further, the *In re OpenAI* Plaintiffs' citation to a white paper that they claim deceptively

15  referred to Books1 and Books2 as a "corpora of books from the Internet" also weighs against the

16  Motion.  The paper lists ***31 authors***,[15] all of whom either worked for or currently work for OpenAI

17  according to their LinkedIn profiles, among which Mr. Amodei is but one. And notably, the second

18  listed author on the paper is Mr. Mann, whom Plaintiffs will be deposing.

19    In sum, these documents do nothing to show that Mr. Amodei has unique knowledge of the

20  books datasets that Plaintiffs cannot obtain from persons they're already entitled to depose.

21    **b.    No Evidence of Mr. Amodei's Involvement in the Decision to Download Books from LibGen.**

23    The *In re OpenAI* Plaintiffs' naked claim that Mr. Amodei was "involved in the initial

24  decision to download books from LibGen," (*In re OpenAI*, Mot. at 6) is likewise unsupported in

[15] Authors listed: Tom B. Brown, Benjamin Mann, Nick Ryder, Melanie Subbiah, Jared Kaplan, Prafulla Dhariwal, Arvind Neelakantan, Pranav Shyam, Girish Sastry, Amanda Askell, Sandhini Agarwal, Ariel Herbert-Voss, Gretchen Krueger, Tom Henighan, Rewon Child, Aditya Ramesh, Daniel M. Ziegler, Jeffrey Wu, Clemens Winter, Christopher Hesse, Mark Chen, Eric Sigler, Mateusz Litwin, Scott Gray, Benjamin Chess, Jack Clark, Christopher Berner, Sam McCandlish, Alec Radford, Ilya Sutskever, Dario Amodei.

1   the evidence.  As an initial matter, the *In re OpenAI* Plaintiffs' use of the word "involved" is vague

2   to the point of being meaningless.  If the standard for being involved is just receiving group

3   discussions on a subject, the list of current OpenAI employees "involved" is long indeed.  Putting

4   that aside, the *In re OpenAI* Plaintiffs cite to one email thread including at least five other people

5   along with Mr. Amodei, on which he never weighed in. (*See* OPCO_NDCAL_1525478.)  The email

6   thread pertained to

7                                                                                                    (*Id.*)

8   The thread did not appear to reach any decision, and, significantly, it identified several other

9   individuals with more substantial and direct involvement in OpenAI's efforts to acquire books and

10  LibGen than Mr. Amodei.  For example, the thread reflects that

11

12                                                        .  (OPCO_NDCAL_1525478.)  But the undersigned counsel

13  understands that Plaintiffs have deposed neither of these individuals.  Thus, all the document shows

14  is the unremarkable point that Mr. Amodei was copied on a discussion in which others suggested

15  new sources of books data and were identified as having the most context on obtaining books data.

16      c.      No Evidence Mr. Amodei Chose the Names "Books1" and Books2."

17      The *In re OpenAI* Plaintiffs mischaracterize documents as supporting their claim that Mr.

18  Amodei came up with the names "Books1" and "Books2." (*In re OpenAI*, Mot. at 7.)  For example,

19  the *In re OpenAI* Plaintiffs cite

20                                                                                                    .

21  (OPCO_NDCAL_0750434.)

22

23

24                                    .  (*Id.* at -438-439.)

25                .  And, as noted above, the white paper referenced in the documents has 31 listed authors.

26  (OPCO_NDCAL_0750434 at -438;  *see also*  OPCO_NDCAL_0780353 (email containing

27  comments on a Google document from Melanie Subbiah, Benjamin Mann, and Alec Radford, but

28  not Mr. Amodei.))    Again, Plaintiffs' best ammunition out of the entirety of the document

1  production is poor support for their arguments.

2      **d.    No Unique Knowledge of "Mitigation" Efforts.**

3      The *In re OpenAI* Plaintiffs claim that communications between Mr. Amodei and Mr. Mann

4  concerning a ▓▓▓▓▓▓▓ related to "potential mitigation strategies." (*In re OpenAI*,

5  Mot. at 7.)  But this is based on a chat that includes four individuals, including current OpenAI

6  employee Nick Ryder.  (OPCO_NDCAL_0858865.)  ▓▓▓▓▓▓▓▓▓▓

7  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This too rebuts, rather than supports,

8  the claim that Mr. Amodei has unique knowledge unavailable from other deponents, particularly

9  as Plaintiffs have not deposed party-witness Mr. Ryder.

10      **e.    Destruction of Books1 and Book2 Occurred** ▓▓▓▓▓▓

11      Finally, the *In re OpenAI* Plaintiffs' speculation that Mr. Amodei "likely possesses

12  information" regarding OpenAI's destruction of Books1 and Books2, confirms that this entire

13  exercise is a fishing expedition undertaken without diligent inquiry and analysis of the first-party

14  discovery from OpenAI.  (*See In re OpenAI*, Mot. at 8.)  Correspondence and discovery from this

15  action and the related *Authors Guild* action show that Books1 and Books2 were removed from

16  OpenAI's systems ▓▓▓▓▓▓▓▓▓.  (*Authors Guild*, ECF No. 2-1,

17  Ex. C (noting the datasets were ▓▓▓▓▓▓▓▓▓ *In re*

18  *OpenAI*, OpenAI Suppl. Resp. to Rog. at 6 ▓▓▓▓▓▓

19  Gutkin Decl., ¶7.)  As such, Mr. Amodei cannot possibly have unique knowledge related to the

20  destruction of Books1 and Books2.  This example, and others discussed above, show that Plaintiffs'

21  cavalier assertions about Mr. Amodei's unique knowledge often have ***no basis in the facts***.

22      **3.    The Recently-Ordered Deposition of Mr. Mann Weighs Sharply Against The**
23      **Need for Mr. Amodei's Deposition.**

24      Plaintiffs will soon be deposing Mr. Mann on precisely the same topics for which they seek

25  to depose Mr. Amodei.  But Plaintiffs have not, and cannot, show that Mr. Amodei's testimony will

26  provide additional, unique information Mr. Mann cannot provide.  Tellingly, there is not a single

27  instance in either of Plaintiffs' briefs that distinguishes Mr. Amodei's knowledge from Mr. Mann's.

28  Rather, both individuals are often discussed in the same breath.  (*See Authors Guild*, Mot. at 2

COOLEY LLP
ATTORNEYS AT LAW

13

1  ("OpenAI later identified Dario Amodei and Benjamin Mann as the individuals ███████

2  ██████████████████████████████████.)

3      In fact, Plaintiffs' briefing demonstrates that Mr. Mann's knowledge is likely superior to

4  Mr. Amodei's on Books1 and Books2. The *In re OpenAI* Plaintiffs explained in their opposition

5  to Non-Party Mr. Mann's Motion to Quash that "Mann is far from a small player in this case," had

6  ██████████████████████████████████ and "Mann prepared a ███████

7  ████████████ and, as such, would have more direct and relevant knowledge. (*In re OpenAI,*

8  ECF No. 257 at 1, 4-5.) This is also reflected in the documents Plaintiffs cite, which show he was

9  a more direct, active participant in discussions relating to Books1 and Books2 than Mr. Amodei.

10 For example, Mr. Mann is an active participant in nine of the emails and chats relating to Books1

11 and Books2 in the *In re OpenAI* Plaintiffs cite,[16] and Mr. Amodei is not even part of two of those

12 discussions.[17]

13     As such, any information that Mr. Amodei could provide on the topics of interest to

14 Plaintiffs would be cumulative of Mr. Mann's testimony and the testimony from OpenAI's

15 witnesses that Plaintiffs are not only entitled to take, but obligated to take, before turning to Mr.

16 Amodei.

17     **C.    Plaintiffs' Motions Should Further Be Denied Because Mr. Amodei's**
       **Deposition Is Precluded by the Apex Doctrine.**
18

19     The well established "apex" doctrine further counsels against compelling Mr. Amodei's

20 deposition. "When a party seeks the deposition of a high-level executive (a so-called 'apex'

21 deposition), the court may exercise its discretion under the federal rules to limit discovery."

22 *Anderson v. Cnty. of Contra Costa*, 2017 WL 930315, at *3 (N.D. Cal. Mar. 9, 2017) (citation

23 omitted). "Pursuant to the apex doctrine, high-ranking officers and officials are not normally

24 subject to deposition absent extraordinary circumstances." *Arminak v. Arminak & Assocs., LLC*,

25 2017 WL 10402987, at *4 (C.D. Cal. Mar. 30, 2017) (citation and internal quotations omitted). The

26

___

27 [16]*See*    OPCO_NDCAL_0872730,    OPCO_NDCAL_0867222,    OPCO_NDCAL_0858865,
   OPCO_NDCAL_0858690,    OPCO_NDCAL_0780353,    OPCO_NDCAL_0750434,
28 OPCO_NDCAL_0067583.
   [17] *See* OPCO_NDCAL_0872951, OPCO_NDCAL_0871057.

1    principles of avoiding a disproportionate burden are particularly applicable where the proposed

2    deponent is a high-ranking officer of a third party—as is the case here.[18]

3         Courts consider two factors in determining whether to compel an apex officer's deposition:

4    "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in

5    the case and (2) whether the party seeking the deposition has exhausted other less intrusive

6    discovery methods." *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011); *see*

7    *also Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *4 & n.1 (N.D. Cal. Jan. 25,

8    2007). The burden is on the "party seeking the deposition"—in this case, Plaintiffs—"to show that

9    it is warranted." *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL

10   9434782, at *2 (E.D. Cal. Dec. 24, 2015). Neither set of Plaintiffs have met this burden as to either

11   factor.

12        Nor could they, because Plaintiffs have ***barely begun*** to depose OpenAI witnesses.[19] *In re*

13   *Google Litig.*, 2011 WL 4985279, at *2. Plaintiffs' failure to develop party evidence that Mr.

14   Amodei's deposition is necessary is dispositive under the Apex doctrine. *See, e.g., Klungvedt v.*

15   *Unum Grp.*, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013) (precluding apex deposition where

16   "plaintiff had not undertaken other methods of discovery before noticing the deposition"); *Affinity*

17   *Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011) (Plaintiff's "failure

18   to seek any written or deposition discovery on these seven statements before moving to compel Mr.

---

19   [18] As the CEO, director, and co-founder of Anthropic (Gutkin Decl., ¶7), Mr. Amodei
20   unequivocally qualifies as an apex executive. Plaintiffs' motions do not seem to contest this point.
     (*In re Open AI*, Mot. at 8-9; *Authors Guild*, Mot. at 6.)

21   [19] Plaintiffs' cases do not compel a different conclusion, as they all involved circumstances where
22   the moving party had either submitted sufficient evidence demonstrating that the apex deponent
     had unique information concerning key issues in the case—something Plaintiffs have not done
23   here—or did not involve an apex deponent at all. *In re Glumetza Antitrust Litig.*, 2020 WL 3498067,
     at *8-9 (N.D. Cal. June 29, 2020) (compelling a limited deposition of defendant's Managing
24   Directors where plaintiffs had shown that the Director possessed some unique knowledge regarding
     issues central to the case); *Kadrey v. Meta Platforms, Inc.*, 2024 WL 4293910, at *1-2 (N.D. Cal.
25   Sept. 24, 2024) (ordering party-witness Mark Zuckerberg to sit for a deposition where plaintiffs
     had made an evidentiary showing that Zuckerberg was the "principal decision maker" concerning
26   key issues in the case); *Mills v. Wal-Mart Stores, Inc.*, 2007 WL 2298249, at *1-2 (W.D. Ark. Aug.
     7, 2007) (ordering the deposition of Wal-Mart's CEO where his own affidavit demonstrated he had
27   knowledge concerning central issues in the case); *Johnson v. Jung*, 242 F.R.D. 481, 485-86 (N.D.
     Ill. 2007) (ordering the deposition of defendants' employee who did not claim to be an apex
28   deponent).

1   Jobs' deposition should bar Affinity from deposing Mr. Jobs about those public statements.").

2   Plaintiffs have cleared neither the high bar set for deposing third parties nor that set for deposing

3   top executives, and certainly not the even higher bar where the deponent sought is both.  This is not

4   a close call.

5       **D.    If Mr. Amodei's Deposition is Compelled, the Court Should Limit It.**

6       If the Court is inclined to grant Plaintiffs' Motions, Mr. Amodei asks that the Court enter a

7   protective order under Rule 26 modifying the subpoena to minimize the burden on him.

8       First, as the Court ordered for Mr. Mann, the Court should require Plaintiffs to coordinate

9   so that Mr. Amodei is only required to sit for a deposition once.

10      Second, Mr. Amodei's deposition should be postponed until after Plaintiffs have deposed

11  Mr. Mann and, at a minimum, the relevant current OpenAI employees identified as having pertinent

12  knowledge in Mr. Mann's declaration.  *See, e.g.*, *Athalonz*, 2024 WL 628846, at *8 (quashing

13  deposition subpoena "without prejudice to Athalonz serving a new subpoena if it still believes

14  Curry's testimony is relevant after completing relevant discovery from Under Armour . . . including

15  depositions of Under Armour employees").

16      Third, Mr. Amodei requests the Plaintiffs and Mr. Amodei should be required to meet and

17  confer after Mr. Mann's and the appropriate OpenAI employees' depositions to limit the scope of

18  his deposition to whatever non-cumulative factual issues remain.  Courts routinely limit the subject

19  matter of third-party depositions to minimize the burden.[20]  This limitation is particularly important

20  where the deponent is an employee of a party's competitor, to avoid a fishing expedition about

21  Anthropic and information unrelated to this case.  *See Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D.

22  259, 265 (N.D. Cal. 2012) (holding that even "unique knowledge [was] insufficient to warrant

23  unrestricted deposition time and subject matter" for deposition of competitor's employee).

24      Finally, Mr. Amodei requests that any deposition be limited to the minimum reasonably

25  needed time on the record to reduce the burden on him as an apex officer of Anthropic.  The Court

26

27  ---
    [20] Indeed, this Court recently gave similar in███████ to Plaintiffs about obtaining documents from
    third-party Microsoft.  At the February 11, 2025 hearing, the Court instructed Plaintiffs to first
28  "ma[k]e a showing that you've tried to get this stuff from OpenAI, such as to lessen the burden on
    a non-party" and "[g]o through that hoop" to establish that what they seek is in Microsoft's
    "exclusive control."  (*In re OpenAI*, ECF No. 327 at 33:17-34:4.)

1    previously limited apex depositions of party witnesses to 3.5 hours (*see In re Open AI,* ECF No.

2    247), and Mr. Amodei's time should certainly be substantially more limited.

3    **V.      CONCLUSION**

4            For the foregoing reasons, Mr. Amodei respectfully requests that the Court deny Plaintiffs'

5    Motion to Compel Mr. Amodei's deposition, or, in the alternative, issue a protective order to reduce

6    the burden on him as a non-party.

7    Dated: February 14, 2025                          COOLEY LLP

8

9                                                      By:    */s/ Jeffrey M. Gutkin*
10                                                            Jeffrey M. Gutkin
                                                             Shannon M. Eagan
11
                                                       Attorneys for Non-Parties
12                                                     Benjamin J. Mann and Dario Amodei

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW

**NON-PARTY'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DEPO
3:23-CV-03223-AMO; 3:25-MC-80017-AMO**