Reilly T. Stoler (SBN 310761)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
rstoler@lchb.com

Rohit D. Nath (SBN 316062)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re* MOTION TO COMPEL COMPLIANCE WITH NON-PARTY SUBPOENAS<br><br>In the matter of<br><br>AUTHORS GUILD*, et al.,* individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPENAI INC., *et al.,*<br><br>Defendants. | Misc. Case No. 3:25-mc-80017-AMO<br><br>Underlying Litigation: *Authors Guild, et al. v. OpenAI, et al.*, 1:23-cv-08292-SHS, S.D.N.Y.<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL DARIO AMODEI TO TESTIFY AT DEPOSITION** |

## I. INTRODUCTION

While employed by OpenAI, Dario Amodei oversaw the creation and use of two books datasets—Books 1 and Books 2 (together, "Books Datasets")—which contain pirated copies of Plaintiffs' works. Those datasets are at the heart of Plaintiffs' copyright infringement claims against OpenAI. Amodei does not dispute that he has relevant, personal knowledge of OpenAI's creation and use of the Books Datasets. Indeed, Amodei did not submit a declaration disputing anything set forth in Plaintiffs' Motion to Compel. Nor could he. Discovery from OpenAI has confirmed his central role in creating and using the Books Datasets. Apex witness or not, Plaintiffs are entitled to depose a witness with such deep personal knowledge of critical issues in the case.

In his opposition, Amodei makes three arguments. Each fails. First, his argument that Plaintiffs have not exhausted less intrusive discovery methods before deposing him misstates the relevant standard and ignores the facts. Under Rules 26 and 45, Plaintiffs need only show that Amodei has relevant personal knowledge, which Plaintiffs have shown through discovery obtained directly from OpenAI that points to Amodei as one of two creators of the Books Datasets and among the individuals most knowledgeable of those datasets. *See* Dkt. 1-1, Exs. C-D, K. Nonetheless, even if Plaintiffs needed to show that they sought the discovery they seek from Amodei through OpenAI first, Plaintiffs have shown as much. Plaintiffs have served numerous written requests on OpenAI related to the Books Datasets, conducted multi-day source code inspections, and deposed two current OpenAI employees. Indeed, Plaintiffs learned of Amodei's central role in assembling the Books Datasets only *because* they have sought detailed discovery from OpenAI in the first instance.

Second, Amodei's invocation of the apex doctrine is misplaced because, assuming it even applies to a high-level executive of a non-party, OpenAI has consistently pointed to him as one of two people with the most knowledge of the creation of the Books Datasets.

Third, Amodei's alternative argument for the placement of onerous conditions—including time limits and amorphous limits on the subject matter of examination—elides his role, ignores his relevant knowledge, and is unworkable. Because OpenAI has identified Amodei as one of two

people who were principally responsible for assembling the Books Datasets at the center of this case—a charge that Amodei does not dispute—Plaintiffs should be entitled to a standard 7-hour deposition with Amodei coordinated with the *In re ChatGPT* Plaintiffs within six weeks of the scheduled hearing date.

## II.  ARGUMENT

### A.  The Court Should Compel Amodei's Deposition Because He Has Relevant Knowledge About the Books Datasets.

To compel non-party testimony, the party issuing a subpoena need only demonstrate that the testimony it seeks is relevant. *Carroll v. Wells Fargo & Co.,* No. 3:15-cv-02321, 2017 WL 1316548, at *2 (N.D. Cal. Apr. 10, 2017). Here, Plaintiffs claim that OpenAI infringed their copyrights by creating and using the Books Datasets, which contain unauthorized copies of their works, to train OpenAI's lucrative Large Language Models (LLMs). Dkt. 1-1, Ex. B. In discovery, OpenAI identified Amodei—and his subordinate, Benjamamin Mann—as the OpenAI employees that created these Books Datasets and among the individuals most knowledgeable about these datasets. *See* Stoler Decl. Exs. C-D; *see also* Mot. at 6. During his deposition, current OpenAI employee, Peter Welinder, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. A, Welinder Rough Tr. 132:5-17.

Knowledge about the Books Datasets and OpenAI's use of the Books Datasets in training its LLMs is directly relevant to Plaintiffs' claim that OpenAI willfully infringed their copyrights by pirating bootleg copies of Plaintiffs' and class members' works. *See, e.g.*, 17 U.S.C. § 504(c)(2); Dkt. 1-1 Ex. B ¶ 416. This is more than sufficient for Plaintiffs to seek—and the Court to compel—Amodei's testimony on this highly relevant topic. *See In re Motion to Compel Compliance With a Subpoena AD Testificandum Lynk Labs, Inc.*, No. 23-mc-80018, 2023 WL 2311948, at *2 (N.D. Cal. Feb. 28, 2023) (granting a motion to compel nonparty deposition where movant "*articulated a reasonable basis for seeking* [a deposition] in connection with [patent] claim" regardless of

1  whether movant could "sustain its burden of proof with respect to willful infringement") (emphasis
2  added).

3  Amodei argues that his deposition is improper because Plaintiffs did not prove that he has
4  unique knowledge about the Books Datasets that Plaintiffs "cannot get from current OpenAI
5  employees or from Mr. Mann." Opp. at 6. This argument is wrong for two reasons.

6  *First*, neither Rule 45 nor any cases cited by Amodei require Plaintiffs to *prove* that Amodei
7  has unique and relevant information to obtain his deposition. As "the person seeking to avoid
8  discovery," Amodei "bears the burden of showing that good cause exists to *prevent the deposition*."
9  *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11–6121 CW, 2013 WL 3884254, at *1 (N.D. Cal.
10 July 26, 2013) (rejecting this same argument from a non-party executive) (emphasis added). On the
11 contrary, courts routinely reject Amodei's argument that Plaintiffs must *prove* that he has unique
12 information. *See e.g., Finisar Corp. v. Nistica, Inc.*, No. 13–cv–03345, 2015 WL 3988132, at *3
13 (N.D. Cal. June 30, 2015) ("the possibility that [the witness] has such knowledge is enough, as [the
14 propounding party] is under no obligation to prove that the evidence exists"); *Hunt v. Cont'l Cas.*
15 *Co*., No. 13-cv-05966-HSG, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) ("The party seeking
16 to take such a deposition does not need to prove conclusively in advance that the deponent definitely
17 has unique, non-repetitive information;" instead, "where a corporate officer may have any first-
18 hand knowledge of relevant facts, the deposition should be allowed.").

19 *Second*, Plaintiffs have easily met their burden even under the legal standard Amodei
20 advances, as there is no question that Amodei has unique, relevant knowledge. Mr. Welinder,
21 OpenAI's VP of Product, ███████████████████████████
22 ████████████████████████████████████████████████
23 ████████████████████████████████████████████████
24 ████████████████████████████████████████████████

---

[1] Ex. A, Welinder Rough Tr. 312:7-13.
[2] *Id.* 312:23-313:5.
[3] *Id.* 313:6-10.

1  ███████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████ Ex. A ,

3  Welinder Rough Tr. 338:24-339:4; 341:25-342:9.

4   The Welinder deposition highlights the need for Amodei's deposition. OpenAI and its employees have identified Amodei as having relevant knowledge about the creation and use of the Books Datasets, and OpenAI and its current employees disclaim knowledge of these relevant facts. Though Amodei complains that OpenAI identified him as a creator of the Books Datasets while its "investigation [was] ongoing," Opp. at 8, Amodei has never suggested that Amodei lacks the relevant knowledge.

   Given Amodei's relevant (and unique) knowledge, he should be compelled to sit for a deposition. *See In re Motion to Compel Compliance With a Subpoena AD Testificandum Lynk Labs, Inc.*, No. 23-mc-80018, 2023 WL 2311948, at *2.

### B. Plaintiffs Have Sought Discovery From OpenAI Before Resorting to A Third Party Subpoena

Amodei argues that Plaintiffs' motion to compel his deposition should be denied because Plaintiffs have taken "negligible steps to gather this information from OpenAI." Opp. at 3. Amodei's argument is demonstrably false—it was OpenAI's responses to Plaintiffs' interrogatories that led Plaintiffs to seek discovery from Amodei in the first place. *See* Dkt. 1-1, Exs. C-D, K. Plaintiffs have issued 10 Requests for Production and 6 Interrogatories seeking information about the Books Datasets. Plaintiffs have conducted more than 20 hours of code and data inspection to discover information related to the creation and use of these Books Datasets. Stoler Decl. ¶ 5. Plaintiffs have taken two OpenAI depositions—a custodial 30(b)(6) deposition and the 30(b)(1) deposition of OpenAI's Vice President of Product, Peter Welinder. Plaintiffs asked both witnesses questions about the Books Datasets, and Plaintiffs have asked for deposition dates for Alex Paino

---

[4] ████████████████████████████████████████████

1  and Nick Ryder. Stoler Decl. ¶ 6. Any suggestion that Plaintiffs are not actively pursuing discovery
2  on the Books Datasets is belied by the record.

3        Amodei also points to several former employees and argues that OpenAI should depose
4  them instead of or before deposing him. This argument fails for two reasons. *First*, Rule 45 does
5  not require Plaintiffs to depose other third parties before deposing Amodei or allow Amodei to
6  dictate Plaintiffs' deposition schedule. *Second*, Plaintiffs intend to depose all the former employees
7  Amodei mentions in his response. Plaintiffs currently plan to depose former employee Benjamin
8  Mann on March 3. Stoler Decl. ¶ 7. Plaintiffs attempted to serve Alec Radford with a deposition
9  subpoena last week and will make additional service attempts this week. Stoler Decl. ¶ 8.

10        Plaintiffs are aggressively seeking discovery on the Books Datasets from OpenAI and other
11  third parties, but it remains true that Amodei is among the individuals most likely to have
12  information about the creation of the Books Datasets. Because Plaintiffs are entitled to discovery
13  on the creation of these key datasets, Amodei must be compelled to sit for a deposition.

14        **C.**     **Amodei's Apex Doctrine Arguments Are Unavailing.**

15        Amodei's argument that the apex doctrine bars his deposition fails. Even assuming Amodei
16  is an apex witness[5], the Court should order his deposition for two reasons—(1) because Amodei
17  "has unique first-hand, non-repetitive knowledge of facts at issue in [this] case and (2) because
18  Plaintiffs have "exhausted other less intrusive discovery methods." *Hunt*, 2015 WL 1518067, at *2.

19        *First*, as explained above, it is undisputed that Amodei has relevant, first-hand knowledge
20  surrounding the Books Datasets at the heart of this litigation. *See supra* Section II.A.; *see also* Mot.
21  at Section III.A.

---

[5] Amodei asserts that his role as Chief Executive Officer of Anthropic qualifies him as an apex witness (Opp. at 14) but Plaintiffs seek Amodei's testimony regarding his work at OpenAI, not Anthropic. Amodei cites no authority for the proposition that the apex doctrine applies to an executive at a *non-party* company and otherwise offers no explanation for why the apex doctrine should extend beyond its traditional bounds to shield him from discovery in *any* matter. *See generally Apple*, 282 F.R.D. at 263 ("The 'apex' doctrine exists in tension with the otherwise broad allowance for discovery of ***party*** witnesses under the federal rules.").

*Second*, Plaintiffs have sought discovery regarding the creation and use of these Books Datasets from the outset of this litigation and have exhausted less intrusive discovery methods. *See e.g.,* Dkt. 1-1, Ex. J (Plaintiffs' interrogatories regarding these datasets, served on February 23, 2024). Plaintiffs have issued numerous written discovery requests, conducted code review, and deposed witnesses seeking information about the Books Datasets. *See supra* Section II.A; *see also* Stoler Decl. ¶ 9. At every turn, OpenAI has maintained its position that Amodei is among the most knowledgeable individuals regarding these datasets. This is more than sufficient to satisfy the doctrine. *See Finisar Corp.*, 2015 WL 3988132, at *2 ("As for the second consideration—less intrusive discovery methods—these may include interrogatories.").[6]

### D. Amodei's Proposed Limitations Are Unsupported And Unworkable.

As a last resort, Amodei asks the Court to order the *Authors Guild* and *In re ChatGPT* plaintiffs (1) delay his coordinated[7] deposition until after seven other witnesses[8] are deposed; (2) limit the scope of Amodei's deposition "to whatever factual issues remain," and (3) limit the length

---

[6] Amodei's apex doctrine arguments are inapposite. In those cases, the subpoenaing party had failed to seek sufficient party discovery or articulate why the apex witness had relevant firsthand personal knowledge. *See Anderson v. Cnty. of Contra Costa*, 2017 WL 930315, at *3 (N.D. Cal. Mar. 9, 2017) ("There is no evidence that Plaintiff has conducted [party] discovery on what health care policies and practices were or were not followed by Jail personnel."); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 9434782, at *2 (E.D. Cal. Dec. 24, 2015) ("[P]laintiffs have not explained how [the apex witness's] state of mind has any relevance to their underlying securities lawsuit, nor why the timing of the statements matters to their securities lawsuit, or what it is about [his] statements that they need clarified."); *Klungvedt v. Unum Grp.*, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013) ("the proposed deponent… has no unique and personal knowledge of the issues involved in this case and … plaintiff has not conducted less intrusive means of discovery to obtain the general corporate information he seeks."); *Affinity Labs of Tex. v. Apple, Inc.,* 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011) (denying deposition of Steve Jobs where subpoenaing party had conducted no written discovery or depositions); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *4 & n.1 (N.D. Cal. Jan. 25, 2007) (finding "no indication that either [apex witness] possess[es] firsthand and non-repetitive knowledge regarding issues relevant to this lawsuit").

[7] Amodei requests an order directing Plaintiffs to coordinate his deposition. Opp. at 16. At all relevant times, Plaintiffs have offered to coordinate on his deposition and do not oppose this request.

[8] Benjamin Mann, Nick Ryder, Greg Brockman, Shantanu Jain, Alex Paino, Chris Hallacy, and Nik Tezak. Opp. at 16.

of the deposition to less than 3.5 hours. Opp. at 16-17. Though Plaintiffs are willing to work with Amodei, his proposed limitations are unsupported and unworkable.

*First*, the request that Plaintiffs take the depositions of various party/non-party witnesses before his deposition is entirely unsupported. Amodei cites nothing that authorizes him to dictate Plaintiffs' discovery strategy and his lone case citation—*Athalonz, LLC v. Under Armour*, Inc., 2024 WL 628846 (N.D. Cal. Feb. 14, 2024)—is inapposite. In *Athalonz*, the court quashed a subpoena seeking the deposition of basketball star Stephen Curry in connection with a patent dispute because the propounding party had not taken party discovery sufficient to explain the relevant information it could obtain from Mr. Curry. *Id*. at *7. The *Athalonz* court explained that the Curry deposition might go forward once there was discovery into Curry's involvement in "developing the allegedly infringing soles of Under Armour's shoes." *Id*. Notably, the *Athalonz* court did not allow Stephen Curry to dictate the order of plaintiff discovery as a condition of his deposition. Here, it is undisputed that Amodei possesses relevant personal knowledge and there is no reason to condition Amodei's deposition upon further party discovery. *See supra* section II.B.

This condition is also unworkable. Fact discovery closes at the end of April in both proceedings, and Plaintiffs are coordinating—across three consolidated proceedings, and myriad attorney/witness schedules—to depose over fifty party/non-party witnesses during that time. Many of the party witnesses Amodei lists may be designated as OpenAI's corporate representatives and, for that reason, will need to be deposed later in the schedule. As far back as June 2024, Amodei agreed to sit for a deposition. Dkt. 1 at 2. As recently as last month, Amodei agreed to complete his document production by February 15. Stoler Decl. ¶ 10. His failure to honor *either* of these agreements has already significantly delayed his deposition. Plaintiffs are entitled to Amodei's deposition and it should proceed promptly.

*Second*, Amodei's request that his deposition be limited to "to whatever non-cumulative factual issues remain" is similarly unworkable and unsupported. Amodei is a critical percipient witness in these lawsuits and limiting the scope of his testimony to the hazy estimation of "whatever non-cumulative factual issues remain," will invite serial, unproductive disputes. The only support

1  Amodei cites for this limitation are direct competitor suits, where courts have restricted parties
2  from questioning their competitors about commercially sensitive information. Opp. at 16 (citing
3  *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 265 (N.D. Cal. 2012)). Here, Plaintiffs are
4  authors—not LLM providers—and there is no risk of Plaintiffs using these depositions to obtain
5  trade secrets or gain commercial advantage.

6  *Finally,* Amodei's request that the Court limit his coordinated deposition to less than 3.5
7  hours should be denied. Plaintiffs have already agreed to Amodei's request to coordinate his
8  deposition and will require more than 105 minutes to develop his critical testimony. Plaintiffs have
9  continuously offered to negotiate a reasonable time limit but Amodei has refused. Stoler Decl. ¶
10 11. Under the circumstances, Plaintiffs ask the Court to order Amodei sit for a seven-hour
11 coordinated deposition.  If—with 3.5 hours allotted in each proceeding—Plaintiffs' questioning
12 becomes duplicative or inefficient, Amodei's counsel may seek appropriate relief.

### III.    CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court GRANT the motion to compel and issue an order directing Amodei to sit for a seven-hour coordinated deposition within six weeks of the scheduled hearing date.

Date: February 24, 025

*/s/ Reilly T. Stoler*
Reilly T. Stoler (SBN 310761)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
rstoler@lchb.com
Telephone:  415.956.1000
Facsimile:  415.956.1008

Rohit D. Nath (SBN 316062)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

*Attorneys for Plaintiffs and the Proposed Class*